Edna M. Oatis v. Commissioner. John P. Oatis v. Commissioner.
Oatis v. Commissioner
Docket Nos. 9554, 9555.
United States Tax Court
1947 Tax Ct. Memo LEXIS 200; 6 T.C.M. (CCH) 569; T.C.M. (RIA) 47141; May 27, 1947
Albert A. Levy, Esq., for the petitioners. Allen T. Akin, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, duly consolidated for hearing, involve income tax for the calendar year 1944. Deficiency was determined against each petitioner in the amount of $1,814.23. The only questions for determination are as to allowance of various deductions claimed. Findings of Fact The petitioners are husband and wife, residing in Louisiana. Each reported one-half of the community income on a return filed with the collector for the district of Louisiana. The wife had no separate income. The husband is engaged in the business of automotive manufacture and supply in New Orleans, Louisiana. During the taxable year he was a member of a partnership. He will be referred to hereinafter *201 as the petitioner. As a distribution of partnership profits, he received two checks, one for $12,821.25 on January 22, 1944, and another for $24,253.33 dated October 18, 1944. The latter check was cashed November 30, 1944. John P. Oatis deposited $10,500 and $750 in bank on December 2, 1944, $1,875 on December 8, 1944, and $2,800 on January 17, 1945, but on December 8, 1944, December 11, 1944, and on February 21, 1945, checks were cashed in the respective amounts of $750, $1,875 and $2,800. The $750 and $1,875 checks were for purchase of war bonds; the $2,800 to the collector for amended estimate of 1944 tax. The rest of the money was kept at home. On December 6, 1944, petitioner was on the way to purchase war bonds with $8,250 in cash in his car. He left the car on the street and it was broken into and the money taken. Though the police were called at once, and investigated, none of the money was ever recovered, and petitioner had no insurance to cover it. He did not usually keep $13,000 or $14,000 on hand, but he had an armored drawer set into the wall where he kept money in a little tin box. He intended on December 6, to buy the bonds from one Comiskey who was in charge of a drive. *202 A Mr. Cousins who knew Comiskey was to go along. Comiskey was petitioner's assessor and he had met him, though he did not know him particularly. He was under no obligation to buy from Comiskey, but thought it was a good idea that if the assessor was handling it, one might as well buy from him as anyone else. No one was with Oatis at the time of the theft. He telephoned the police. The petitioner John P. Oatis from about 1936 to about 1940 employed one M. G. Smith as an expert mechanic, manufacturing automotive springs. After quitting work with Oatis about 1940, Smith became ill and was under treatment at an infirmary. Oatis lent him money from time to time, being in need of skilled help and considering the prospect good that Smith would return to work. Smith was not related to Oatis. On June 2, 1944, Smith, for money borrowed, gave Oatis his 90-day promissory note for $414. About September 1945 he died. No part of the note was ever paid. Oatis had kept a memorandum of the loans, from which the note was drawn, but did not have it at time of trial. About December 31, 1944, Smith seemed to be getting better, but later had a relapse. Oatis did not know when he determined that Smith *203 would be unable to repay the $414, and gave him more money in 1945. Smith was in a dying condition by March 1945. One Owen L. Murphy, who had a restaurant and rooming house next door to Oatis' shop, knew Smith, who stayed at his rooming house for several years. In 1944 and 1945 Murphy advanced Smith cash and meals and lodging, because Smith was sick, destitute, and unable to work. He was not related to Murphy. Smith had always paid his bills. Murphy thought he would recover, but never got back any money lent Smith. At the end of 1944, Murphy felt that Smith was going to be able to pay the money back, more than at any other time. About September 27, 1944, Oatis paid $33.75 state taxes on real estate. On February 2, 1944, he paid real estate taxes of $75.82. In the taxable year petitioner's family expenses were $4,000 to $5,000. Sales tax was 3 per cent. Oatis paid gasoline tax, and a license tax of $5 on a car. Oatis usually gave $10 a year to the Red Cross, but had no receipts, and at trial claimed a gift of $10 to the Community Chest; also from $2 to $5 a week to the Catholic Church. He did not know what he gave in 1944 to March-O-Dimes, or to Anti-Tuberculosis League or Doll *204 and Toy Fund. The petitioner's income tax returns claimed deductions of $350 to Catholic Church, $25 to Red Cross, $25 to Community Chest, $10 to March-O-Dimes, $4 to Anti-Tuberculosis League and $10 to Doll and Toy Fund; also $10 for auto and driver's license, $160 for "Sales Tax, City and State," $28.80 for gasoline tax, $36.50 for cigarette tax, and $191.48 for state income tax. Opinion We are here to decide upon the deductibility of various items contended for by the petitioner as deductible under various subdivisions of section 23 of the Internal Revenue Code. The burden is, of course, upon the petitioner; all deductions have been disallowed. The proof in general is not satisfactory. Some of them have not been proven. Thus the item of cigarette tax, $36.50, is not touched upon in the proof, and for that reason, if no other, is disallowed. The item of $191.48, "State income tax", was not claimed in the petition, and no amendment to conform to proof was asked. The item is therefore disallowed. Evidence was submitted of payment of state real estate taxes totaling $109.57, but no claim was made therefor either in returns or in petition, and no attempt was *205 made to amend to conform to proof. Moreover, it appears from the return that this exact amount, $109.57, is taxes paid on business property from which rent was received in the amount of $636, and was deducted from such rents to reduce (with other expenses of depreciation, repairs, etc.) the net rent reported to $226.93. The deduction for such taxes as contended for, would be duplication, and is disallowed both for that reason and because not in issue. The item of $28.80 gasoline tax is not deductible, being imposed in Louisiana on the dealer. State v. Standard Oil Co. of Louisiana. 190 La. 338; 182 So. 531; State v. Sinclair Refining Co., 195 La. 288; 196 So. 349. No proof whatever was made of payment of the items of $10 for Doll and Toy Fund, $10 for March-O-Dimes, or $4 for Anti-Tuberculosis League, and these items are therefore disallowed. As to $350 for Catholic Church, there is indefinite proof of contribution by petitioner's wife of from $2 to $5 on Sunday. Even $5 a week would be only $260; $104 is allowed as deduction. Though $25 is claimed on the returns for Red Cross and $25 for Community Chest, the proof is that $10 was *206 usually given to each, but this is no proof of payment in 1944. The deductions are denied. As to the item of $10 claimed for Auto and driver's license, the proof was $5, and that amount is approved as deduction. Deduction of $160 was claimed for "Sales tax, city and state." The proof was that the family spent $4,000-$5,000 per year. Three per cent would be $120- $150 a year; $160 was deducted. In the absence of any proof that tax was paid on all that amount, but applying the principle of Cohan v. Commissioner, 39 Fed. (2d) 540, as best we may, we approve deduction for sales tax of $60, or one-half of the minimum amount, poorly proved, on the theory that one-half of the amounts spent may reasonably be considered to have been for taxable matters. We next consider the deduction of $414 as loss on the M. G. Smith note. It must be and is disallowed, for the record contains no way of knowing when the note became worthless. Section 23 (k) of the Internal Revenue Code. At the end of 1944 Smith was apparently in an improved condition, and Murphy was hopeful about him. The year 1944 is not shown to be the year when the debt became worthless. This leaves *207 for consideration the alleged loss of $8,250 because of theft of money. The respondent urges that the testimony of the petitioner is unsupported and should not be accepted, and there is some force in that contention. The petitioner's wife, though a party, did not testify in her own behalf, and report of the alleged theft to the police is not greatly corroborative. Nevertheless, the evidence is not contradicted, either by other evidence or circumstances and, somewhat reluctantly upon the whole record, we accept it and allow deduction of the $8,250. Hughes v. Commissioner, 153 Fed. (2d) 712. Decision will be entered under Rule 50.